# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DELLINGER UNLIMITED, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION,** |
| ) | **ORDER AND** |
| CATERPILLAR, INC., PETERBILT ) | **RECOMMENDATION** |
| MOTORS COMPANY, and RUSH ) | |
| ENTERPRISES, INC., ) | 1:10CV390 |
| ) | |
| Defendants. ) | |

This matter is before the court on Defendant Rush Enterprises, Inc.'s motion to dismiss for lack of personal jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (docket no. 6.) Plaintiff has responded in opposition to the motion; and, in this posture, the matter is ripe for disposition. For the reasons stated herein, the parties will be required to participate in jurisdictional discovery. To this extent, it will be recommended that the court deny the motion to dismiss without prejudice to Defendant Rush to renew the motion after the parties engage in jurisdictional discovery.

**BACKGROUND**

Plaintiff Dellinger Unlimited, LLC, is a North Carolina limited liability corporation owned by Scott Dellinger. (Compl. ¶ 2.) Defendant Rush Enterprises, Inc. ("Defendant Rush") is a corporation organized under Texas law, with its principal place of business in New Braunfels, Texas. (Helveston Aff. ¶ 3.) According to the

complaint and accompanying affidavits in response to the motion to dismiss, on September 6, 2008, Plaintiff purchased a 2008 Peterbilt truck from a subsidiary of Defendant Rush Enterprises, Inc. in Winter Garden, Florida.[1] (Compl. ¶ 7; Brown Aff. ¶ 4(F).) The tractor came equipped with a new C15 engine manufactured by Defendant Caterpillar. Before the purchase, Plaintiff notified the subsidiary that Plaintiff planned to haul automobiles up and down the eastern United States. (*Id.* ¶¶ 8-10.) In addition, the complaint alleges that Plaintiff expressed concerns to the subsidiary's agents in Florida that Plaintiff had heard that other customers had experienced problems with the C15 engine. According to the complaint, a Caterpillar regional manager assured Plaintiff that Caterpillar would take care of any problems that Plaintiff might have with the engine, that the truck would never be out of service for more than 24 hours due to engine problems, and that Caterpillar would take care of Plaintiff. (*See id.* ¶ 9.)

Plaintiff alleges in the complaint that since the purchase, the truck has broken down numerous times due to problems with the C15 engine. (*See id.* ¶¶ 14-15.) Plaintiff further contends in response to the motion to dismiss that another subsidiary

---

[1] Although Plaintiff alleges in the complaint that Defendant Rush sold Plaintiff the truck, the briefs on Defendant Rush's motion to dismiss indicate that Defendant Rush Enterprises was not the entity that sold Plaintiff the truck. Rather, Rush Truck Centers of Florida, Inc. sold the truck to Plaintiff. Furthermore, Rush Truck Centers of North Carolina, Inc. is the North Carolina entity that may have serviced the truck in North Carolina. It further appears from the parties' briefs and affidavits that Defendant Rush is the parent company of Rush Truck Centers of North Carolina, Inc. and Rush Truck Centers of Florida, Inc.

of Defendant Rush Enterprises–Rush Truck Centers of North Carolina, Inc.–serviced the truck at least once at a service center in North Carolina.

On May 19, 2010, Plaintiff filed the following claims in this court against Defendants Caterpillar, Peterbilt, and Defendant Rush Enterprises: breach of express warranty under N.C. GEN. STAT. § 25-2-314; breach of implied warranty of fitness for a particular purpose under N.C. GEN. STAT. § 25-2-315; and breach of contract.[2]  On June 9, 2010, Plaintiff amended the complaint for the sole purpose of adding a claim for unfair and deceptive trade practices under N.C. GEN. STAT. § 75-1.1.  On August 24, 2010, Plaintiff took a voluntary dismissal as to Defendant Peterbilt; thus, Rush Enterprises and Caterpillar are the only remaining Defendants.

**ANALYSIS**

In support of the motion to dismiss for lack of personal jurisdiction, Defendant Rush has submitted an affidavit by Rush's in-house counsel Frederick Helveston, stating that Defendant Rush is a Texas corporation, is merely a holding company, and that the little business that it conducts is conducted entirely in New Braunfels, Texas.  (Helveston Aff. ¶ 4, Def.'s Ex. A.)  Helveston further asserts in the affidavit that:

> Rush Enterprises, Inc. conducts no business activities in North Carolina. Rush Enterprises, Inc. has no registered agent in North Carolina, no place of business in North Carolina, no employees in North Carolina, owns no real estate or personal property in North Carolina,

---

[2] Subject matter jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

> has no bank accounts in North Carolina, has no post office boxes in North Carolina, has no telephone listings in North Carolina, has never negotiated or entered into a contract in North Carolina, and does not maintain any records in North Carolina. Rush Enterprises, Inc. is not licensed to do business in North Carolina as a foreign corporation, and it has never applied for a charter or license to do business in North Carolina.

(Helveston Aff. ¶ 5; *see also* Def.'s Support Br., p. 3.) Helveston further states that Defendant Rush "was not involved in any way in the manufacture, sale, purchase or delivery of the Peterbilt Motors Company tractor or the Caterpillar, Inc. engine that are the subject of Dellinger Unlimited, LLC's Complaint." (Helveston Aff. ¶ 6.)

In response to the motion to dismiss, Plaintiff does not appear to challenge Defendant Rush's contention regarding its contacts with North Carolina. Rather, Plaintiff contends that the court may exercise personal jurisdiction against Defendant Rush in North Carolina based on the conduct of a Rush subsidiary in North Carolina. That is, Plaintiff states in its response brief that a subsidiary of Defendant Rush Enterprises–Rush Enterprises of North Carolina–serviced the truck at least once at a service center in North Carolina. In other words, Plaintiff appears to be making a "piercing the corporate veil" argument. Plaintiff contends, for instance, in its brief:

> 1) all of Rush's contact information and principal place of business is the same (even for subsidiaries Rush has registered to do business in North Carolina); 2) Rush's subsidiaries share essentially the same officers with Rush Enterprises Inc.; and 3) Rush wholly owns its subsidiaries further showing Rush Enterprises Inc. is an integrated network "owning and operating" commercial facilities in 11 states including North Carolina.

(Pl.'s Resp. Br. at .) A subsidiary's presence in the forum state does not, however, automatically confer personal jurisdiction over its parent corporation. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Whether this court may exercise personal jurisdiction over Defendant Rush, therefore, appears to depend on whether Plaintiff can pierce the corporate veil against Defendant Rush based on the conduct of its subsidiaries. Here, the court will allow the parties to engage in limited jurisdictional discovery as to whether this court has personal jurisdiction over Defendant Rush, either based on Defendant's own contacts with the forum state or based on a piercing the corporate veil theory.

Finally, I note that, as to Plaintiff's contention that personal jurisdiction may be exercised against Defendant Rush in North Carolina by piercing the corporate veil, the parties must address choice of law issues in their renewed briefs after engaging in jurisdictional discovery. That is, the parties must apply North Carolina's choice of law rules in determining which state's substantive law applies as to piercing the corporate veil.[3]

---

[3] The parties appear to assume in their briefs that the substantive law of North Carolina applies. In *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345 (M.D.N.C. 1995), this court noted that "North Carolina courts have not spoken to the issue of choice of law in piercing the corporate veil." *Id.* at 348. The court further found that "if the North Carolina Supreme Court were faced with a choice of law question for piercing the corporate veil, it would adopt the internal affairs doctrine and apply the law of the state of incorporation." *Id.* at 349. *See also Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648, 659 (M.D.N.C. 2004) (noting that it did not matter whether North Carolina law or Delaware law regarding piercing the corporate veil should be applied because the result would be the same under either analysis).

**CONCLUSION**

The court orders both parties to engage in a sixty-day jurisdictional discovery period to commence on October 1, 2010, after which time Defendant may renew its motion to dismiss. This court, at that time, expects both parties to adequately brief all veil-piercing issues and will require Plaintiff to establish, by the preponderance of the evidence standard, that Defendant Rush is subject to personal jurisdiction in North Carolina.[4] To this extent, the court should deny Defendant Rush's pending motion to dismiss (docket no. 6) without prejudice to refiling the motion after conducting jurisdictional discovery.

Finally, if before or after discovery Plaintiff determines that it has mistakenly sued the wrong entity, Plaintiff should consider taking a voluntary dismissal of Defendant Rush and amending the complaint to name the proper entity as a Defendant. Of course, Plaintiff will still have the burden of proving that personal jurisdiction may be exercised in North Carolina against any alternatively named Defendant.

_____
WALLACE W. DIXON
United States Magistrate Judge

October 13, 2010

---

[4] The court, at that time, may consider holding an evidentiary hearing if necessary.